## In re WILKES.

(City Court of New York, General Term. January 30, 1889.)

ATTORNEY AND CLIENT—MISCONDUCT—CERTIFICATE TO SUPREME COURT.

An attorney addressed a sealed letter to a justice of the city court of New York, in which it was stated, in reference to a decision of such justice, that "it is not law; neither is it common sense. The result is, I have been robbed of $80,"—and in which he threatened to lay the matter before the bar association. On the hearing of the attorney for writing the letter, he stated that he wrote it hoping the justice might review the matter, and suggest a remedy, and that he did not charge the justice with robbing him, but that the justice's action enabled another to rob him. *Held*, that the matter should be certified to the general term of the supreme court for action.

Proceedings against George S. Wilkes, an attorney, charged with misconduct in office. This matter comes before the court in the following manner: An application was made before Mr. Justice BROWNE in an action pending, wherein one Murray was plaintiff and Jones defendant, to permit the defendant to serve a supplemental answer, pleading a deduction of $80, costs, to which the defendant claimed he was legally entitled. On such hearing the justice, under the authority conferred upon this court by section 3172 of the Code, decided to refer the matter to a referee, to determine whether the defendant was in fact entitled to such deduction, to the end that said justice might intelligently decide whether the application made by the defendant was with or without merit, and whether he was entitled to any relief. After making such interlocutory decision, the justice was waited upon by George S. Wilkes, the attorney for the plaintiff in the action, who said that rather than have the delay of a reference he would consent to deduct the aforesaid $80 from the recovery which his client had obtained. Upon such consent the deduction was made, and the application apparently terminated. Mr. Wilkes thereupon drew an order reciting the application and the aforesaid consent by him given, and denying the application made by the defendant, with $10 costs to be paid to him, which order was signed by the justice, and the matter was supposed to be at an end. A day or two after the entry of the order Mr. Wilkes composed and wrote a letter to the justice, and deposited it in the United States mail, addressed to him, wherein he attacked the judicial integrity and judgment of the justice by saying, in reference to said decision: "It is not law; neither is it common sense. The result is I have been robbed of eighty dollars,"—and in which letter he threatened to lay the matter before the bar association for their consideration and action. Upon the certificate of the justice setting forth these facts, an order was granted requiring Mr. Wilkes to show cause at a general term of this court why the proceedings should not be referred to the supreme court for its action, or certified to the grand jury of the county for their consideration. It was hoped by the court that at the hearing of the application Mr. Wilkes would have excused his unseemly conduct, or at least apologized for the wrong; instead of doing which he offers, by way of explanation, the following statement: "Keenly feeling the injustice, yet driven by his financial necessities, deponent settled with the defendant, and, smarting under the utter illegality of the decision, wrote the letter mentioned in the certificate, hoping that the justice might review the matter, and suggest some remedy. He had no intention to insult the justice, and has been careful not to publish the matter. In submitting the case to the bar association he intended that, if the law was as ruled by Mr. Justice BROWNE, that association could take measures to have the law amended, to prevent endless litigation. I did not charge Mr. Justice BROWNE with robbing me, but that his action in the matter had enabled the defendant to rob me of $80. That the decision of Mr. Justice BROWNE on the motion is entirely contrary to law I have no manner of doubt." It is needless to say that this is neither a justification nor an apology; for, instead of showing contrition for the act done, he reaffirms the charge, with

qualifications that do not alter its effect. The explanation goes further. It gives as a motive for the act a belief that on receiving the letter the justice would review the matter, and suggest some means by which the $80 the attorney consented to waive might be restored to him. If the decision made by the justice was a conscientious exercise of judicial power, and we are sure it was, we do not see how the attorney could expect that a missive from him, couched in such language, would change those convictions, and induce the justice to do that which his former action would clearly indicate to be wrong. If the judge had allowed himself to be moved by any such means, he would have acknowledged a weakness not to be commended in judicial character. Intelligent argument may carry with it weight and influence; but threats, intended to influence judicial conduct, carry with them neither fear to the just, nor benefit to the person intentionally or thoughtlessly using them. Under these circumstances, what is the court to do to maintain its dignity, and protect its justices from a repetition of similar conduct?

Argued before McAdam, C. J., and Nehrbas and Ehrlich, JJ.

*George S. Wilkes, pro se.*

Per Curiam. It is fortunate for the administration of justice that but few cases of this kind have found their way into the books, which would indicate that such conduct on the part of attorneys is exceptional, and not general. A case of like character is reported in 1 N. Y. Supp. 7, entitled *In re Griffin.* In that case this court held that the writing of a letter by a defeated attorney to a judge, scandalizing his decision, is gross misconduct, but not a criminal contempt, under section 8 of the Code of Civil Procedure, for the reason that the sending of a sealed letter is not the publication of a scandal, within the meaning of the law; that, though not guilty of a contempt, the matter may be officially called to the attention of the supreme court, which has power to discipline the attorney. If the conduct of the attorney in this case is allowed to go by unnoticed, it may give rise to the suspicion that such practice is allowed in this court, if in no other. If it is good practice, it ought to be encouraged; if pernicious, it ought to be stopped. The relations between the bench and bar ought to be of a high character, indicative of confidence in the integrity of both; and if counsel, learned in the law, are permitted, by writings leveled at the heads of judges, to charge them with ignorance, with unjust rulings, and with robbery, either as principals or accessories, it will not be long before the general public may feel that they may redress their fancied grievances in like manner, and thus the lot of a judge will be anything but a happy one, and the administration of justice will fall into bad repute. A court certainly cannot command respect from the public so long as its sworn officers flauntingly and in writing charge its chief officers with offenses which disqualify them for their high place. Under the circumstances, we deem it our duty to certify the matter, and all the proceedings therein, to the supreme court, at a general term thereof, to the end that that court may properly determine whether officers, licensed by it to pursue a high and honorable calling, are warranted in taking such unseemly liberties.